NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0666n.06

No. 12-4374

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
*Jul 19, 2013*
DEBORAH S. HUNT, Clerk

CHRISTOPHER BAILEY; THOMAS A.
KRAMER; BRET COLLIER,

    Plaintiffs-Appellants,

v.

UNITED STATES ENRICHMENT
CORPORATION; SEVERANCE PLAN FOR
SALARIED EMPLOYEES OF UNITED STATES
ENRICHMENT CORPORATION.,

    Defendants-Appellees.

                       /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

BEFORE:    **SILER, CLAY, and GIBBONS**, Circuit Judges.

    **CLAY, Circuit Judge.**  Plaintiffs are workers who were fired by Defendant United States Enrichment Corporation ("USEC") when Defendant lost a government contract. Plaintiffs brought claims pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Plaintiffs allege that they were wrongfully denied benefits in violation of ERISA § 502(a)(1) and (3), that Defendant breached its fiduciary duty in violation of ERISA §§ 502(a)(2) and 404(a); and that Defendant interfered with protected rights in violation of ERISA §§ 502(a)(3) and 510. The district court dismissed Plaintiffs' suit under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and dismissed Plaintiffs' motion for class certification as moot. For the reasons set forth in this opinion, we **AFFIRM** the judgment of the district court.

## BACKGROUND

Defendant United States Enrichment Corporation ("USEC") is a producer of nuclear fuel. USEC operated a Department of Energy ("DOE") facility in Piketon, Ohio, called the Portsmouth Gaseous Diffusions Plant ("PORTS"). Plaintiffs are former salaried employees of USEC who worked at that facility. USEC established a Severance Plan for Salaried Employees of the United States Enrichment Corporation ("Plan") as a self-insured ERISA Plan effective on May 18, 1999.

In August 2010, USEC began firing workers as part of a reduction in force. USEC had lost a government contract for the decontamination and decommissioning of the PORTS facility. The contract had been awarded to Fluor-B&W Portsmouth LLC ("Fluor") after a competitive bidding process. Plaintiffs are workers who were fired and then re-employed by Fluor. In effect, Fluor took over the facility and the employees of USEC. Plaintiffs thus did not miss any work; when Fluor took over the facility, the workers who stayed with them continued their employment at the facility. Sometime before the workers were actually fired (or transferred to Fluor), USEC sent a letter regarding severance benefits, which stated that if a worker was moving over to Fluor and "retaining credit for prior length of service," then he or she was going to be employed under "substantially equal conditions of employment" and would not be eligible for severance benefits under the Plan.

Plaintiffs filed suit in the Southern District of Ohio on behalf of themselves and similarly situated participants in USEC's Severance Plan. They brought three claims, one for benefits under ERISA § 502(a)(1) and (3); one alleging breach of fiduciary duty under ERISA §§ 502(a)(2) and 404(a); and one alleging interference with protected rights under ERISA §§ 502(a)(3) and 510. Defendant moved the court for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). The

district court granted that motion, and dismissed the class-certification motion as moot. Plaintiffs now appeal on all three of their claims. A dismissal pursuant to Rule 12(b)(6) is a final, appealable order. *See, e.g.*, *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003).

## DISCUSSION

### A. Standard of Review

This Court reviews *de novo* a district court's grant of a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Gunasekera v. Irwin*, 551 F.3d 461, 465–66 (6th Cir. 2009). Under Rule 12(b)(6), this Court "accept[s] all the Plaintiffs' factual allegations as true and construe[s] the complaint in the light most favorable to the Plaintiffs." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005); *accord Gunasekera*, 551 F.3d at 466. "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *accord Casias*, 695 F.3d at 435.

While this Court reviews the decision of a district court under Rule 12(b)(6) *de novo*, if the plan gives the administrator discretionary authority over determinations of benefits eligibility, then the decisions of a plan administrator as to an entitlement to benefits are reviewed under an arbitrary and capricious standard. *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health and Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir. 2000). This deferential standard is only appropriate

where there is clear language granting such discretionary authority to the administrator of the plan.

*Id.*

### B.    Analysis

Plaintiffs have made three claims under ERISA.  First, they allege that under ERISA § 502(a)(1) and (3), they were entitled to benefits under the Plan.  Next, they allege that USEC breached its fiduciary obligations under ERISA § 502(a)(2) pursuant to ERISA § 404(a), and finally, they allege that USEC interfered with protected rights in violation of ERISA §§ 502 and 510.  We address each of these claims in turn.

### 1.    Benefits Under ERISA[1]

Plaintiffs' first claim is for denial of benefits.  Under ERISA § 502(a)(1), "[a] civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan . . . ."  29 U.S.C. § 1132(a)(1)(B).  Plaintiffs essentially allege that they were entitled to receive severance pay under the terms of the Plan, and that USEC did not have the discretion to refuse to pay severance benefits to workers who were fired during an involuntary reduction in force.

---

[1]The district court and the parties frame this argument in terms of whether Plaintiffs are "participants" within the plan, but this discussion is better understood as a simple claim for benefits. Under ERISA, a participant is "any employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . ." 29 U.S.C. § 1002(7). As the Supreme Court has held, this means that a "participant" is one with a colorable claim to benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117–18 (1989). The distinction between a participant and a beneficiary, while sometimes glossed over in the case law, appears to be that a beneficiary is one who has received or will receive benefits, while a participant is merely someone who might be eligible for them. *Id.* The Plan summary also elides the distinction, stating that "[i]f you are an eligible employee (as identified above), you will become a 'Participant' in the Plan, and therefore entitled to receive benefits from the Plan." (R. 26, Second Amended Complaint, Exh. A, Feb. 21, 2012, at 1.) However, for the reasons discussed *infra*, the terms of the Plan itself foreclose Plaintiffs' claim for benefits regardless of whether they are found to be participants or not.

"When interpreting ERISA plan provisions, general principles of contract law apply; unambiguous terms are given their 'plain meaning in an ordinary and popular sense.'" *Lipker v. AK Steel Corp.*, 698 F.3d 923, 928 (6th Cir. 2012) (quoting *Farhner v. United Transp. Union Discipline Income Protection Program*, 645 F.3d 338, 343 (6th Cir. 2011)). Under the Plan, the summary provisions state:

> You **may** be eligible for severance benefits under the Plan, including severance pay, if you are a salaried employee, **as defined by the Company**, who is voluntarily or involuntarily terminated for reasons other than cause and solely as a result of a Reduction in Force. You **may** also be eligible for severance benefits under the Plan, including termination pay, if (i) you are a salaried employee who has received long term disability benefits from the Company for 24 months, (ii) the Company determines, in its discretion, that you are totally disabled, and (iii) you are voluntarily or involuntarily terminated for reasons other than cause as a result of a Reduction in Force. **The Company has the sole discretionary authority to determine who is eligible for severance benefits.** If you are an eligible employee (as identified above), you will become a "Participant" in the Plan, and therefore entitled to receive benefits from the Plan, only if you elect to participate by signing and returning the General Release as described herein.

(R. 26, Second Amended Complaint, Exh. A, Feb. 21, 2012, at 1 (emphasis in original).)

Therefore, the plain language of the Plan states that USEC had discretion as to who received severance benefits. In addition, Plaintiffs concede that the Plan gives USEC discretion to determine an employee's eligibility for severance benefits. And there is no question that employers are permitted to set up plans that give them complete discretion over whether or not to award severance benefits. See, e.g., *Gravelle v. Bank One Corp.*, 333 F. App'x 955, 959–60 (6th Cir. 2009).

Next, Plaintiffs rely heavily on an employee handbook called "Termination of Employment" ("HR document"), published by USEC's human resources administration. Plaintiffs allege that this document modifies the discretion afforded to USEC's determinations of eligibility for benefits.

However, even if this Court accepts Plaintiffs' contention that the HR document was incorporated by reference into the terms of the Plan—a question that the district court noted has not been satisfactorily resolved—the HR document does not help Plaintiffs' argument. The HR document states that "[s]everance pay benefits are not payable when an employee is employed by or receives an offer of employment where continuity of employment with credit for prior length of service is preserved under substantially equal conditions of employment." Here, Plaintiffs continued at the same jobs, in the same facility, on the same project, without any period of unemployment, just under a different employer. Therefore the jobs were "substantially equal," and under the HR document, the Plan had the discretion to determine that Plaintiffs were not entitled to benefits.

Plaintiffs allege that even if USEC had the discretion to distinguish between employees who received substantially equivalent offers of employment and those who did not, several members of the putative class were denied benefits despite having received jobs at Fluor that were not equivalent. As the district court found, Plaintiffs' allegations of unequal employment benefits are based entirely on benefits, such as pensions, rather than responsibilities and employment duties. But the plan never mentions benefits, only credit for prior length of service, which is accounted for as a matter of salary, position, and responsibilities. And while other forms of workplace protections define terms like "equivalent position,"[2] the plan does not have a definition for "substantially equal conditions of

---

[2]For example, under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*., an "equivalent position" is defined as "one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. § 825.215(a).

employment," and we will uphold any definition supplied by the plan so long as it is not arbitrary or capricious. *Shelby Cnty. Health Care Corp.*, 203 F.3d at 933; *Easterly v. Philips Electronics N. Am. Corp.*, 37 F. App'x 166, 168 (6th Cir. 2002) ("The parties agree Philips's decision to deny benefits under the [p]lan is subject to the 'arbitrary and capricious' standard of review. 'A decision is not arbitrary and capricious if it is based on a reasonable interpretation of the plan.'") (quoting *Shelby Cnty. Health Care Corp.*, 203 F.3d at 933).

USEC made a reasonable distinction between employees who were picked up by Fluor and those who were not, and was reasonable in using that distinction in determining whom to award severance pay. That decision was supported by the plain language of the Plan and by the terms of the HR document. Accordingly, the judgment of the district court must be affirmed.

Plaintiffs also claim that they are entitled to benefits under ERISA § 502(a)(3), which entitles participants or beneficiaries of the Plan to obtain other equitable relief. However, that provision is a remedial rather than substantive expansion of § 502(a)(1)(B). *See Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). It exists so that a court has other remedies at its disposal but does not expand the causes of action available to plaintiffs under ERISA. See Mertens v. Hewitt Assocs., 508 U.S. 248, 253–54 (1993). Accordingly, because Plaintiffs have failed to state a claim under ERISA § 502(a)(1(B), they cannot avail themselves of the equitable remedies available in § 502(a)(3).

Finally, Plaintiffs argue that they are entitled to equitable estoppel under § 502(a)(3). They argue that this is not an attempt to expand the causes of action permitted under ERISA, but instead, an alternative remedial approach that this Court could adopt. But this argument does not address the fact that they have no claim against USEC, because they were not deprived of a benefit to which they

were entitled. While "equitable estoppel may be a viable theory in ERISA cases," *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 456 (6th Cir. 2007)(quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998) (en banc) (internal quotation marks omitted), Plaintiffs have failed to state a case for it. Under an ERISA plan, a Plaintiff seeking equitable estoppel must plead five elements: a representation of a material fact, awareness by the defendant of the true facts, intent by the defendant to act upon that misrepresentation, unawareness by plaintiff of the true fact, and justifiable reliance by plaintiff on the mispresentation. *Id.* In this case, Plaintiffs have not shown any misrepresentation, and even had they shown as much during the reduction in force, "[w]hen a party seeks to estop the application of an unambiguous plan provision, he by necessity argues that he reasonably and justifiably relied on a representation that was inconsistent with the clear terms of the plan." *Id.* (citation omitted). Plaintiffs have not pleaded facts that suggest there was any such reliance. They only claim reliance on the HR document, but the terms of that document are not inconsistent with the terms of the Plan as interpreted by USEC. Accordingly, Plaintiffs fail to state a claim for equitable estoppel.

### 2. Fiduciary Duty

Plaintiffs additionally allege that USEC breached its fiduciary duty under 29 U.S.C. §§ 1101–04. Under ERISA, anyone who administers a plan is a fiduciary:

> [T]o the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

There is no question that USEC was a fiduciary of this Plan, and neither party suggests that there was no fiduciary duty. However, the district court found that USEC did not act as a fiduciary in determining eligibility for benefits. Put another way, while USEC had a fiduciary duty to the Plan, that duty was related to its management of the assets of the Plan, rather than to its determinations of benefit-eligibility. The standard of care under ERISA is that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–
>
> (A) for the exclusive purpose of:
>
>> (i) providing benefits to participants and their beneficiaries; and
>> (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
>
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104(a)(1).

The district court found that this language refers only to the asset management of the plan. As a matter of law, the district court was correct. An employer's fiduciary duty to a plan is related to its management of assets and its administration of the terms of the plan. It is not applicable to decisions to create, amend, or end a benefits plan. *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). An employer is therefore not acting in its fiduciary capacity with respect to the

plan when it makes a benefits-eligibility determination. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). Moreover, as the Supreme Court has stated, "ERISA's fiduciary duty requirement simply is not implicated where . . . the [p]lan's settlor, makes a decision regarding the form or structure of the [p]lan such as who is entitled to receive [p]lan benefits and in what amounts, or how such benefits are calculated." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999).

The best argument for Plaintiffs is their argument that USEC violated its fiduciary duty by "attempt[ing] to collude with third parties to develop strategies to avoid or lessen the payment of severance benefits to putative class members." (Pl.'s Br. at 28.) But this allegation is insufficiently supported by their factual allegations. There are simply not enough facts in Plaintiffs' pleadings for a court to draw the inference that USEC colluded to deprive Plaintiffs of their benefits under the Plan in any way that would support a claim made under USEC's fiduciary duty to the Plan. *See Iqbal*, 556 U.S. at 678 (2009). Accordingly, Plaintiffs fail to state a claim for relief based on USEC's alleged breach of fiduciary duty.

### 3. Interference with Protected Rights

Plaintiffs' final claim is that USEC interfered with their entitlement to severance pay. The district court found that "[e]ven if they were participants, Plaintiffs' allegations fail to state a claim." Under ERISA § 510:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140 (internal citation omitted).

To state a *prima facie* case for interference under ERISA, a plaintiff "must show: '(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled.'" *Clark v. Walgreen Co.*, 424 F. App'x 467, 474 (6th Cir. 2011) (*per curiam*) (quoting *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir. 1992)).

Plaintiffs have failed to state a *prima facie* case. Taking all of the allegations in their complaint as true, Plaintiffs have still failed to demonstrate either an adverse action or the requisite intent. Plaintiffs alleged that agents of USEC were instructed to misrepresent the status of Plaintiffs' benefits and threatened to withhold benefits until Plaintiffs signed resignation letters. But Plaintiffs have not provided any factual basis for these allegations. Moreover, Plaintiffs argue that they were forced to sign resignation letters, but the provisions of the Plan that establish the possibility of severance pay do not distinguish between voluntary and involuntary reductions in force. Those provisions only distinguish between individual firings for cause and lay-offs of the type at issue here.

Furthermore, there are no plausible and supported allegations of intent to deprive Plaintiffs of their benefits through interference. As Defendant argues, Plaintiffs' allegations do not support a theory that the employees were fired in order to prevent them from receiving benefits. If anything, the adverse action of firing them would have led to the award of benefits. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143 (1990) ("By its terms § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting."). Accordingly, Plaintiffs cannot show that USEC took any action that was motivated by a desire to deprive them of

11

benefits. Plaintiffs have also conceded that they were terminated because of the loss of a government contract. Therefore, the district court was correct to dismiss Plaintiffs' claims on the basis of an interference theory.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.